We'll call the next matter, next case, H. J. Heinz Company v. Starr Surplus Lines Insurance, Mr. Murray. Thank you, Your Honor. May it please the Court, my name is Jim Murray on behalf of the appellant, H. J. Heinz. May I reserve five minutes for rebuttal? Your Honor, that request will be granted. So in the ten minutes I have, in addition to answering your questions, I would like to underscore three legal errors. I know there's extensive briefing, so I want to highlight the three legal errors that the lower court made that should result in reversal and judgment in favor of Heinz. First, Starr waived rescission and ratified the policy when it relied on Condition 5.10 of the policy, the choice of law provision. Second, Starr waived rescission when it agreed to sell this policy to Heinz, despite explicit knowledge of at least two events upon which it alleges it bases its rescission claim. And third, Starr waived it as a matter of law by failing to act promptly and adopting a wait-and-see approach, wait and see if the big claim comes in. These three issues, Your Honor, Senator reviewed de novo. What's in evidence is not disputed. The Court's interpretation and Starr's interpretation is the issue. First, Starr sought equitable rescission to void this policy ab initio. Even I know what that means in Latin. Let me just talk about standard review a second. At least on the rescission question and the question of waiver, which you're asserting. You're asserting waiver here. And ratification. Isn't the issue of waiver a question of fact under New York law? No, I mean issues of fact relate to the waiver, but it's a de novo review when it's a misinterpretation and error of law that infects the Court's decision with respect to the waiver. For example, can I just give a quick example? And I'm going to get to this, but what they knew about the Canada pouch incident, what those e-mails meant, and whether they were admissible. All of that's factual. What the Court said and what the Court did was draw legal conclusions from those that this Court should review de novo. What about the case, the appellate division case in 1981, AMREP Corp versus American Home Assurance Corporation that purported to say that the question of waiver is a question of fact? Your Honor, if you read the case carefully, it's what I just said. There are issues of fact that are relevant to waiver. So that's a distinction? Absolutely, Your Honor. And especially in the case, let's take ratification, for example, first of all. That's pure law. The only fact that matters there is the fact that Starr moved for a New York choice of law based on a condition of the policy, 5.10. Let me tell you, we cite a lot of maxims about what rescission in total, et cetera. In light of their opposition, the most important line, and if I might, comes from the Severo Brothers case. It's the First Department, Appellate Division, New York. The effect of such rescission is, of course, to nullify the entire contract. Still quoting, time limitations, conditions, promises, prices, dash, all. 5.10 is a condition. It's a choice of law condition. This doesn't say little conditions or big things or important things. You can't have your cake and eat it, too. If you're going to allege rescission as if that contract never existed on the face of this earth, then you've got to take the whole kit and caboodle. And that's what did not happen here. And they enjoyed the benefit of that. Now, how do I know this? Isn't the test that we're looking to whether there's some unequivocal action that's inconsistent with forfeiture of the policy? Yes. Where they asserted rescission from the get-go and then in addressing issues around rescission or waiver are suggesting that the court should look to the choice of law provision there, that that was the agreement of the parties, to evaluate issues around rescission and waiver, how can we say that there's an unequivocal action inconsistent with forfeiture of the policy? Because rescission was right out of the box. Because, Your Honor, the contract falls in total if they want rescission. That initial intuition, if Your Honor is having it, think about what if it said the law of civil France or the law of South Africa or what have you. That is only, New York law is only potentially applicable, and it was a benefit for sure. The standards of New York are very different than Pennsylvania. That is only a possibility because of condition 5.10. I'm still talking about ratification. So when the Severo Court says all conditions, all promises dash all, it means that. Not little things. Validity. Their response in our opposition was, well, geez, this says about validity as well. But that is in a situation, Your Honor, where in those cases all reflect this, where the parties resisting rescission obviously can look to the choice of law in every other position if it's right. For example, So how would this case be different if we were applying Pennsylvania law on the rescission question? On ratification and rescission, it wouldn't be different. Every state is clear on that, Your Honor. If you take one benefit of a policy, you have ratified the policy. If Your Honor is asking how would the jury instructions have been different, it would have been the first instruction on misrepresentation would have been intentional and clear and convincing, the same as the second instruction. But the court, the district court, found that even though they instructed the preponderance of the evidence, they also found that Star prevailed even under a clear and convincing standard. The court said that in a footnote to protect it on appeal, and what he said was Well, he said it then. That's what he said. But what he said, Your Honor, was that he found that this was intentional. That didn't mean on a clear and convincing evidence, I get to try the case differently. I get to ask different questions. It was only an advisory jury. Well, it was an advisory jury, and the reason we consented to it was because Judge Schwab said he couldn't imagine not following the advisory jury. Yes, it was an advisory jury. And that's why, Your Honor, I'm underscoring here, everything I'm telling you this morning doesn't depend on those factual findings. The issue of ratification is a pure legal issue. You have to decide. You have to look at the cases and decide. Can you pick and choose? Let's get past that. Yes. Then you're with Waver with respect to having sold a policy, and I would like to spend one of my minutes on this because this is a classic example of where the lower court interpreted documents and evidence that were in the case as testimony, and he said not credible. With respect to Canada, 2004, March of 2004, they knew about the Canada recall. March of 2004 or 2014? 2014. Okay. And at the appendix at 12, the court said, well, this was a mere newspaper article. In their opposition brief, they say, well, this was a squib long, long ago somewhere in the bowels of Starr. But look at the evidence that's in the record. Number one, those emails were produced by Starr as part of its initial disclosure in this case, the Hines case. Secondly, these are not vague and ambiguous squibs. This is a three-day discussion. I'm looking at 82586. I read them again this morning. They were a bit ambiguous to me. What were they all about? Your Honor, 2586, Jill Peet. By the way, these are not just an underwriting. This is my underwriting. This is the Hines underwriting. It was the same person. Same person, same two people. Kristen Walters. The same year. I caught both of them. Absolutely. 82 days before she started underwriting. And she says, Patty, between last week and today, I have a couple of notification of recalls of infant food sold in pouches due to packaging defects. Both Hines and Club Organic are recalling products. I've copied the notification. Not just a squib notification. Response, an hour later. Thanks. I will investigate. Yeah, but the person that she sent this to wasn't involved. It wasn't subsequently involved in placing this insurance. No, not at all. But Ms. Peet wasn't. So it was her knowledge, it's Starr's knowledge, and Mr. Walters' knowledge about the recall. She can't just selectively forget. How is knowledge of the recall alone sufficient? There's nothing there about the actual losses, and isn't it the combination of the recall and the losses that make it material? No, Your Honor. First of all, two things. The counterclaim that was filed in June of 2015, paragraph 22, explicitly alleges that one of its bases is that it didn't know about Canada, that it didn't know about the poultry recall. No, she sent an email. Your Honor, might I on this? Because this is an important one. One other thing. Yes. Because I was raised in the old school, and when I was caught when I get a request for admission, do I awake at night worrying about procedure and substance? I read the request for admission on this issue to the jury in the case, and this was it. It said A2646. Admit that Starr was aware of Canada loss no later than March 10, 2014. The answer I read to the jury, Starr objects to this request. It's vague and ambiguous. Notwithstanding this, Starr states that Heinz's Canada loss was referenced in an industry publication no later than March 10, 2024. Obfuscation, nonresponsive, deemed an admission. Based on these emails that they produced to us, they knew about this recall. But it doesn't include the loss figure, right? It doesn't include the amount? The amount, that's right. No, but here's what it does, Your Honor. First of all, they knew about it. They had an obligation. We cite all the case law. They knew about it, and they waived it. Well, let's just say Jill P, or Jill P, whatever you pronounce your name, she knew about it in March of 2014. Yes. There's no evidence or testimony in record that when she was participating in the underwriting of this policy that she remembered. That's not the standard, Your Honor. The standard is clearly what you're deemed to have knowledge of what's in your file. And as a matter of fact, if that's all it took to get rid of a waiver to say, geez, I don't remember that, that's why we have the law that you are deemed to know and deemed to have knowledge. So are you saying it's a waiver as a matter of law? Absolutely, Your Honor. And in response to your question, this goes to a good point about Mr. Waldner. Materiality, he says, an $11.5 billion company, a $10 undisclosed loss would be material. Said it under oath. That's the testimony, and it's in the record. So unless Jill P thought that the Canada loss was going to be less than $10, she had an obligation to follow up and then ask it. But the value of it doesn't matter, Your Honor. And here's the second thing. Remember, our big point on the fact issues that I'm not getting to right now is that it clearly said as of May 1, 2013, she was on notice that this was one that was after that date. She was on notice because she knew in March of 15 that there was one. So if you're going to take that position now, gee whiz, let no see, no do. She knew about that and should at least inquire further. Those are the legal issues, Your Honor. I would do Listeria, but I'm out of time. You're reserved five minutes for rebuttal, so you'll hear back from me. Thank you. Okay. All right. Mr. Frank? Thank you, Your Honor. Robert Frank. May it please the Court, this is Robert Frank for Starr. This is a case in which the trial court found as fact that Hines made multiple intentional misrepresentations in its application for insurance. It's a case in which the court found that Hines' global insurance director disclosed to Hines' management the most important facts about Hines' past loss experience in order to persuade them to purchase the particular insurance that was in question and at the same time failed to disclose the same facts to Starr so that Hines could persuade Starr to issue a policy on the terms desired by Starr and at the price desired by Starr. Those are findings of fact. The specifics of them are as follows. Question 6E on the application asked, has the applicant, its premises, products, or processes been the subject of recommendations or complaints made by any regulatory agency or of any internal or third-party audit over the last 12 months? Or have any fines or penalties been assessed against the applicant by any food or similar regulatory body over the last three years? The answer given by Hines was no. The truthful answer was yes. Hines had been fined by the government of China for selling baby food contaminated with mercury nine months before it submitted its policy application. Hines had been subject to a complaint and a subsequent audit by the government of China with respect to a separate contamination event involving nitrite in baby food that was ten times the legal limit allowed by the Chinese government four months before Hines applied for insurance. And the Canadian government had banned all imports by Hines from Australia because baby food imported from Australia three months prior to policy inception had been found to be unfit for human consumption. Mr. Frank, what significance should we accord to the unanimous jury decision that Starg waived his right to assert rescission? I think the answer to that is a matter of law. It is entitled to no weight. The question here is entirely equitable. Were there misrepresentations made such that the policy should be rescinded? What is our standard of review of the decision that Judge Schwab made? The answer is it is a clearly erroneous standard. So you disagree with your opposition on that standard of review? I certainly disagree with what Hines says. They want us to review this question of whether or not there was rescission or a waiver of rescission of De Novo. Do you disagree with that? Yes, I certainly do. Why do you disagree with that? Because the underlying findings of fact, was there a misrepresentation and was there a waiver, both of those questions are questions of fact. Separate questions. There is no question we have to review Judge Schwab's findings of fact for clear air and determine whether or not the court abuses discretion, if that's the case. But they argue that the question of waiver is reviewed De Novo. The question of waiver is a question of fact. There is no authority cited by either party that suggests that waiver is a question of law. Indeed, it would have made no sense to put it to the jury even for an advisory opinion if it were a question of law. And it turns not on what's in dispute is not the legal principle to be applied, but whether in the course of evaluating the risk in the first instance, the undisclosed information was so obvious to an underwriter as to be tantamount to an outright disclosure. Where is the burden? If an underwriter is documenting, they're aware of a claim and that they're going to investigate and then they fail to do so. First, I want to resist the hypothetical, but the burden is on the defendant. I'm sorry, the burden is on Hines in this instance, the party asserting waiver to prove waiver by preponderance of the evidence. Why don't those facts show waiver? Why don't those facts show sufficient awareness in a decision with notice not to follow up? The only thing that was cited in oral argument just now about waiver is a single, the disclosure, the publication in a squib two and a half months earlier that was then deemed relevant to a different risk. What's a squib, by the way? I receive, and I bet the court receives, publications every day in which there's a two-sentence description of some event. Sounds like a tweet. Tweets are more important these days. I agree that tweets are more important these days. A star receives 150 of these things a week, 150 of these publications a week. Each has two sentences about some kind of loss. This loss was thought to be relevant to a different underwriting situation being done by a different person, just as the court noticed. Was it about a policy that Starr had covering Hines? The record's a little bit unclear about this, but was the squib, was the squib about a policy that was at that time in place? No. With Hines? No. No, there was no policy in place with Hines. Okay, so it was just general information that was relevant to a different risk. And arriving two and a half to three months before Hines' application for insurance, if I could represent to the court that I remember every squib that I read two and a half months ago, I would impair my credibility. That's as much as they have on waiver. And the remarkable thing about it is that that loss, it turns out, was a loss on the order of $500,000, $600,000. It was the 2014 Canadian loss, which is one of the things which you cite in your counterclaim for rescission as one of the material misrepresentations. Let me give you a sense of the size that we're talking about. Now it wasn't the size. Okay. The SIR, the self-insured retention, was $5 million. This loss was on the order of $500,000, $600,000. But it would still go to the underwriting, wouldn't it not? I mean, it was a loss. It was a regulatory challenge. It is a fact that the judge It is significant enough that you put it in your counterclaim. Do you agree with that? Yes, yes, I agree with that. Okay. Because what was not disclosed were two enormous losses, one of $11 million to $12 million involving the China nitrate loss, and the other was the fact that there had been a listeria contamination, which was intentionally written down from They say that you had knowledge of that. You acknowledge knowledge of that listeria contamination. That's what they say. The testimony is that if you looked hard enough somewhere in the files of the insurer, you could find that. But the fact is that the global head of insurance intentionally changed the number from $12.8 million to zero. Intentionally. And then they argue that there is a burden on the insurer to disbelieve the certification given by Hines to the effect that the information that is being provided is believed to be truthful when it was known to be untrue, and that all relevant information had been disclosed. In that certification that was given to you, it was crossed out, the date of May 14 was crossed out, and it was written in May 2013. No, I don't believe that's correct, John. Doesn't that cover the China nitrate loss? Doesn't that mean? I have to essentially say we're certifying up to May 2013, which therefore was not a misrepresentation as to the China nitrate in 2014. If I may, I'll reframe your question to get it closer to what I think the record shows. There was attached to the application, one of the questions said, tell me all your losses in the last 10 years, whether they're covered by insurance or not. And in a parent response to that, there was an attachment that has a date on it that is a May 2013 date. But it was accompanied by a representation that all of the information, that nothing material was being withheld. It was accompanied by a separate answer in the application for insurance that there had been no governmental actions in the last 12 months and no audits in the last 12 months. It was sent to Hines, it was sent to Star, I beg your pardon, with a date on it of June 5, 2014 and represented to be the information upon which one could reasonably determine the SIR, the self-insured retention, the level at which insurance would begin and the premium to be determined. And it was sent to Star by Hines' agent expressly representing that it justified the low SIR that Hines was requesting. So it was held out as truthful and complete. And furthermore, that's a question of fact. I think the problem is what Hines is saying here is, I'm sure they're not going to admit they weren't truthful, but they're not arguing about that. And that's a fact finding that's going to be very hard to disturb. But the question is, did you have enough in your file to put Star on notice that they should have asked a few more questions and said, well, you say nothing, but what about this, what about that? I think that's where they're coming from. The legal standard is, was there an omission that was so clear that it was tantamount to a disclosure of absent information? Negligence is not the standard. And in this context, the omitted information was accompanied by an express certification in which Hines undertook to disclose that information. I understand that, but their response to it is, yes, but you knew things that were inconsistent with the express representation, and that puts you on some duty to inquire. When you define new, let me just try to describe the facts accurately. New in this instance is, in one case involving a smaller loss, was seen in a squib two and a half months earlier relating to a different loss, long since forgotten and undisputed. What about the wisteria? That's probably the clearest one. What do they claim you should have known about the wisteria? What they claim is that at some point in history, a separate application had been filed which contained a similar listing and listed the amount of the wisteria loss. So the argument is that although I handed you something that said that this was a zero loss, and I represented, certified that that was truthful, you really had a burden to go back and look through all of your records to see if every one of perhaps 50 entries in that schedule was a truthful entry. It is simply not the law that you have any burden to do that. Is that a fact issue? All of this was presented to the trial judge, and it is a fact issue, and he resolved it in our favor. I think the ultimate point that I would make here is that the one actual question of law that was raised by my brother when he argued is whether by relying on the choice of law provision in the policy, there was a waiver or ratification of the contract. If I may just have one moment on that question. That issue is governed by section 201 of the Restatement of the Law of Conflicts, which says expressly that questions relating to the effect of a misrepresentation under a contract are to be governed by the law selected by the parties. The contract provision itself says, that is the policy provision itself says, that all questions relating to the validity of this contract will be decided under New York law. Those would be nonsense provisions. It's the mere fact that every time the person claiming rescission was pointed to the choice of law provision, that simply vitiated their opportunity for rescission. The provision would be a nullity every single time it was relied upon by the plaintiff in a rescission case. I respectfully suggest that that is not the law. I'd point to one other thing, and that is that this is a provision that relates to how disputes will be resolved. It does not afford benefit to one party or the other. It is simply the ground rules for how an issue will be resolved. This is an issue that in a very close, analogous situation went to the Supreme Court in a case called Prima Paint, where the question was whether there was fraud in the inducement of the contract. In fact, the contract said that all disputes will be resolved by arbitration. Does the resort to arbitration vitiate the claim of fraud in the inducement? The answer is no. These dispute resolution provisions stand separately from provisions that afford affirmative benefits. Where are we if we conclude that the Peave email definitely establishes that you had actual notice of the 2014 candidate loss? Where are we on the question of waiver? That's what we thought. I think that you would weigh that. If you were the trial judge, you would weigh that fact with all of the other facts that demonstrate. Where are we if we concluded that the district court did not give that fact enough weight? I believe the standard, with respect, Your Honor, is that you should look at the totality of the facts relating to waiver and determine whether there was a, quote, plausible basis for the district court's finding of fact on that subject. And with due respect, Mr. Murray doesn't look to all of the facts. He picks out the single fact that is the best for him, as weak as it may be. Thank you. I'm sorry. Can you address just briefly on choice of law, the significance of the service of suit endorsement and centering indemnity? Yes. There is, as you know, an express choice of law provision. There is an endorsement that is addressed certainly primarily to the choice of forum question, and virtually everything in there is addressed to choice of forum. There are two or three words in there that suggest that the court in the forum would apply the law and practice of that forum. This is a standard provision in insurance policies. The great majority of cases hold that that does not vitiate. That does give the insurer the freedom to select where they will sue. But it does not vitiate the choice of law provision, and there are a couple of reasons. One is there is an express explicit provision. The law is that an addendum or an endorsement has to be explicit in overriding it, and it is not. Second, there are a very large number of cases that say the same thing. And the third is that it's – lost my point. Centering indemnity says in the alternative that you look at it as a choice of law rules, but it also in the first instance says you look at it as a choice of law provision for that forum. Why doesn't that apply here? Fair question. Two things, three things maybe. First, centering indemnity, in centering indemnity there was no express choice of law provision unlike this case. The only thing there was was the service of suit endorsement. Second, in centering indemnity the issue was not in dispute. That is, the court expressly says that the parties didn't assume that Pennsylvania law applied. And third, even in that situation, the court determined that what it would do is apply the choice of law principles of what was there, the forum state. And the application of the choice of law principles in this instance would lead you back to the selection made by the parties expressly in their contract, and therefore would select New York law subject to the other limitations that apply under the restatement of contracts. So the main difference between this case and the case that Your Honor is citing is that there is here an express choice of law provision, and there was not there, and the issue was not disputed there, and it is disputed here. And in any event, it would lead you only to the choice of law of the forum state, which in this case would look to the contractual choice of law. Thank you, Mr. Frank. Thank you very much. And we'll hear back on rebuttal from Mr. Murray. Thank you, Your Honor. That's not accurate with respect to Judge Greenaway's decision. Judge Greenaway said that if federal law doesn't apply, then you look to this provision, and he clearly made the point that the law and the procedure would be duplicitous if law didn't mean the substantive law. So on that choice, and not to mention not only the Third Circuit, but there were two other courts that went our way on this before the policy was sold, and courts across the country instruct, if you don't like the language, you've got to print it on your ISO form, because of the way the court's interpreting it, and then change it and make it clear. Make it clear that it was just that Judge Greenaway was right in that decision and it was relevant to that decision. Secondly, Mr. Frank's arguments about the restatement are only applicable if he wants a contractual remedy here for misrepresentation or what have you. What's the contractual remedy? We might have to charge a little more, give a little more premium. The contract's not voided ab initio, so we've got a $25 million loss in now. Yeah, they'll say if we misrepresented you guys, but they chose the equity decision element here. It was equitably rescinded and voided. It's one or the other. They didn't want to go with the restatement because then the remedy wouldn't have been big enough, now that they know they have a real loss that they had to pay us. Mr. Murray, let me ask you one question. It seems that certainly one material misrepresentation here was this China nitrate loss in 2014. Well, China nitrate loss in 2014. Yeah, a material misrepresentation. Well, several things. One, again, our initial position is that the as of date, as of May 1, 2013, if they want to know more. But how can you, and I raise that point, that in fact somebody connected with Heinz, either them or their broker, changed the submission date to May of 2013. But when the insurance companies, and in this case Star was asking for data up to 2014, how can you say that failure to disclose something that you knew about, that was as significant as the China nitrate loss, was not a misrepresentation? Your Honor, first of all, for what I just said, but secondly, this is a fact issue, but it was disclosed to them at the latest by January 5, 2015. But that was after the policy was already in place. That was after the date of the loss of the 2014 China nitrate loss. Let's stay with the misrepresentation. Well, secondly, factually, and then this would be clear, this would be subject to clear error, but Mr. Asher testified, and there's a lot about China. One, China has the highest nitrate levels requirement in the world. There's testimony from our expert from England, our quality insurance guy, that there's more nitrate in broccoli. That's an arguable issue with the people of China. That's why I'm not raising it with Your Honor. That's why I'm not raising it. But the reason I'm raising it is you want to seize on the e-mail, and the e-mail deals with the Canada loss, which was less than a million dollars. But it seems to me that the material misrepresentation here, if there was one, was the China nitrate loss. And I just don't hear any explanation, and the explanation is you disclosed it in 2015 after the insurance policy was put in place, and the loss occurred for which the suits are bought. It doesn't seem to answer the question. But it still would be a waiver. They waited until they had a claim come in and waited seven months to allege it. But secondly, Your Honor, the claim was already in. So they didn't waive it until after. Okay. January 5th they knew about it. They waited until June to raise it in their city court. They didn't wait until June. The lawsuit was filed in May. My lawsuit was filed, Your Honor, because your lawsuit was filed in May. Yes, and in response they filed a rescission claim, and the judge bifurcated it. But on the legal issues, Your Honor, Mr. Zinner, you're saying that they should have pulled it. They asked you about it, though. They sent you e-mails and said, explain it. Maybe there's an explanation here. They didn't pull the trigger right away. And we did, Your Honor. That's all a fact issue anyway. That's a fact issue, and once we did, we disclosed it. It's in Chinese and in English. And they knew it was January 5th, and their people knew, and they didn't raise it as a rescission issue because it wasn't, in our testimony, a fact issue. That's why I'm not going to win on that one. But it was not a serious issue. But that's a fact issue. Wait a minute. You're right. It is a fact issue. But the question that you're arguing here is you're asking for a waiver of rescission. Ratification, Your Honor. You're asking for a waiver of rescission based on ratification. Yes. Based on ratification. Ratification and waiting too long. Okay. And the law ruled that you're not entitled to a waiver. That's right. You're not entitled to a waiver. They're entitled to rescind the policy. That's right. And you're hanging your head on the PV mill. My question simply was why wasn't, in and of itself, that failure to disclose that Canada nitrate loss enough to allow rescission? Oh, because the law is absolutely clear. One of the independent bases they had for rescinding was, for example, the Canada loss. They alleged it in their article. Do you agree with that? I absolutely agree. And they sold us the policy knowing that because they were waiting. They wanted Hank's business like nine other insurance companies. That might be right. And they waited. And they waited until the claim came in. I don't have to talk about nitrate. Whatever. There's nothing in the record that shows that they knew about that at the time the policy went into place in July 2014. Your Honor, as a matter of law, in the cases we cite, they're tasked with knowledge of their own documents. And this was not in the bowels of STAR. This was produced to us in a request we made. I'm talking about the Chinese 2014. That's laden with fact issues. If that were the only issue on appeal, I wouldn't be up here. You can say it's a fact issue, but I don't know how you get by it. Well, first of all, they ratified it. We never get to it because they ratified it by invoking the choice of law. Mr. Frank said nothing about that. Judge Schwab wouldn't let us talk about it. He wouldn't let us put it to the jury. We had to get the jury verdict based on these other two points. He concedes, therefore, that it's a matter of law. And this Court needs to read those cases. And there's no footnotes for conditions. This was a condition. It's a big deal to say this policy never existed on the face of the earth. And if it didn't exist, that choice of law didn't exist, and they took a benefit of it. And even if they hadn't prevailed, they sought to take a benefit of it. So they made that decision. May I speak very quickly to Listeria? Very quickly. We don't want you to say we're going to let you talk about it. Pardon me? We don't want you to say we're going to let you talk about it. That's a good question, then. Listeria. Again, geez, this was somewhere in some other case, some other file, some other place. Documents in this case, A82655. Twelve months earlier, the same insurance company, Star, the same two underwriters, Waldner and Peave, were trying to get Heinz in business. In 2013, we had an application for malicious product tampering. And the San Diego incident was disclosed in that. And, of course, it's on the loss sheet. It's down there. It's Delamix, the Listeria loss. They're complaining a not null was to it. Well, we explained it to them a year earlier. It says the operation of the meat food plant in San Diego was suspended in 2008 by the USDA. Corrections were made and the plant reopened. No recall or withdrawal resulted. Now they say, what's the first thing they do when they get the new application? It's in the record. Mr. Waldner writes to Ms. Peave and says, hey, we get the chance at Heinz's business again. Same policy. It's not a different policy that the lower court said. Malicious product and accidental contamination were both bid on. We ended up going just with accidental, but it was still bid on. And the first thing he does is, same as Peave, get the application from last year. Get it from Caring in London and read it. And that was right there in the application. Again, this is the fact. Those are an issue. Those are an evidence. This court needs to determine what the legal consequence is. And I don't quite agree on the advisory jury. The Supreme Court has said this in Bowles v. Consumer. Rule 52A does not inhibit an appellate court's power to correct errors of law, including those that may infect a so-called mixed finding of law and fact or a finding of fact that is predicated on a misunderstanding of the governing rule of law. Misunderstanding based on these documents. You can't call these documents testimony and then say you took into account credibility. These documents are what they are. Thank you, Your Honor. Thank you very much. And we thank counsel on both sides for the job well done. We'll take the matter under adjournment.